# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| AMBAR RAMIREZ, ) | CIVIL ACTION FILE |
| ) | NO: _____ |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| AEROTEK, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## COMPLAINT

Plaintiff Ambar Ramirez ("Plaintiff" or "Ms. Ramirez") files this Complaint for Equitable Relief and Damages against Defendant Aerotek, Inc. ("Defendant" or "Aerotek"), showing the Court as follows:

## INTRODUCTION

1. This civil rights action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981. Defendant subjected Plaintiff to unlawful race and gender discrimination and retaliation.

1

2. This is also an action for breach of contract pursuant to the laws of the State of Georgia.

3. Plaintiff seeks injunctive and equitable relief, back pay, compensatory and punitive damages, costs of litigation, and attorneys' fees to remedy these civil rights violations.

## JURISDICTION AND VENUE

4. Ms. Ramirez's claims present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

5. This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b), because the Defendant conducts business in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

## THE PARTIES

6. Ms. Ramirez is a resident of Georgia and submits herself to the jurisdiction of this Court.

7. Defendant Aerotek is a foreign profit corporation that is licensed to, and does transact business in the state of Georgia and within the Northern District of Georgia.

8. Defendant may be served with process via personal service upon its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

9. Defendant Aerotek is an "employer" as defined by Title VII in that it employed more than fifteen employees for each working day in each of the twenty calendar weeks in the current and/or preceding calendar years.

10. At all times relevant to this Complaint, Ms. Ramirez was Aerotek's "employee" within the meaning of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Ms. Ramirez filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the acts about which she complains.

12. The EEOC issued a Notice of Right to Sue to Ms. Ramirez on September 25, 2020.

13. This civil action is filed in the appropriate federal district within ninety (90) days of Ms. Ramirez's receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

14. Aerotek hired Ms. Ramirez as a Recruiter on or about June 26, 2017.

15. Ms. Ramirez is a black woman.

16. Aerotek later promoted Ms. Ramirez to an Account Manager position.

17. Upon her promotion, Director Kyle Mitchell ("Mr. Mitchell") became Ms. Ramirez's supervisor.

18. Mr. Mitchell is a white man.

19. Ms. Ramirez was the only black female Account Manager reporting to Mr. Mitchell.

20. Ms. Ramirez routinely met and exceeded her performance goals as an Account Manager.

21. Ms. Ramirez's performance routinely surpassed that of the white male Account Managers.

22. On or about August 29, 2019, Mr. Mitchell informed Ms. Ramirez she would be demoted to the Account Recruiting Manager position effective September 9, 2019.

23. At the time of the demotion, Ms. Ramirez was the highest producing Account Manager.

24. Prior to the demotion, Ms. Ramirez had never been reprimanded or counseled that she had any performance deficiency.

25. Mr. Mitchell stated Ms. Ramirez was being demoted because she was not properly managing the team of recruiters who reported to her.

26. However, Ms. Ramirez and the team she managed consistently met their goals.

27. Although the white male Account Managers were unable to manage their teams or consistently meet their goals, none of the white male Account Managers were demoted.

28. Aerotek experienced high turnover for the Recruiter position on all teams, not just Ms. Ramirez's team.

29. White Account Managers had multiple recruiters on their teams quit because of mistreatment from the Account Manager, but these white account managers were not demoted.

30. At least one white Account Manager was named in a discrimination complaint by a recruiter on her team, but that white Account Manager was not demoted.

31. The demotion resulted in a lower salary, lower commissions, and lower benefits for Ms. Ramirez.

32. On or about September 2, 2019, Ms. Ramirez complained to Aerotek's human resources department that the demotion was discriminatory.

33. Aerotek took no action to correct or prevent the discrimination about which Ms. Ramirez complained.

34. Ms. Ramirez's new supervisor, Allison Seitz ("Ms. Seitz"), was aware of Ms. Ramirez's complaint to human resources.

35. Aerotek began retaliating against Ms. Ramirez after her complaint to human resources.

36. For example, Ms. Seitz began treating Ms. Ramirez with contempt and hostility after her complaint to human resources.

37. Ms. Seitz closely micromanaged Ms. Ramirez while allowing the other employees she supervised to work more autonomously.

38. Eleven days into Ms. Ramirez's new position, Ms. Seitz reprimanded Ms. Ramirez for alleged "inadequate communication" regarding various aspects of Ms. Ramirez's new position.

39. However, prior to this reprimand, Ms. Seitz had not notified Ms. Ramirez about of the communication requirements about which Ms. Seitz reprimanded her.

40. One of the requirements of the Account Recruiting Manager position was for Ms. Ramirez to meet with her clients three times per week.

41. Throughout her employment, Ms. Ramirez autonomously scheduled and attended these client meetings.

42. After her complaints to human resources, Ms. Seitz reprimanded Ms. Ramirez for not communicating her whereabouts while she was out of the office for the client meeting.

43. Ms. Seitz set disproportionate work goals for Ms. Ramirez as compared to the other employees that reported to Ms. Seitz.

44. For example, Ms. Ramirez had approximately four to five clients with various locations throughout the Atlanta metro area.

45. The other Account Recruiting Manager that reported to Ms. Seitz had only one client which was located only a few miles from Aerotek's office.

46. As a result, for Ms. Ramirez to comply with her client meeting requirements, she need to spend significantly more time out of the office than the other Account Recruiting Manager that reported to Ms. Seitz.

47. However, Ms. Seitz required Ms. Ramirez to complete the same number of in-office calls and recruiting assignments as the other Account Recruiting Manager who had significantly more time in the office.

48. Ms. Seitz reprimanded Ms. Ramirez for not meeting the disproportionate work goals.

49. During the week of Thanksgiving 2019, Ms. Seitz required Ms. Ramirez to meet the weekly call and meeting goals that are typically performed over five days, despite that the holiday resulted in a shorter week.

50. Ms. Seitz did not require any other employees to meet the weekly call and meeting requirements during the week of Thanksgiving 2019.

51. On two occasions, Ms. Seitz reprimanded Ms. Ramirez for taking time off that Ms. Seitz approved her to take.

52. Ms. Seitz reprimanded Ms. Ramirez for reporting to work late, but she did not reprimand other employees who also reported to work late.

53. Mr. Mitchell would periodically send emails to his team of subordinate employees highlighting praise he received from clients about individual employees.

54. After Ms. Ramirez's demotion, Mr. Mitchell received an email from a client praising Ms. Ramirez.

55. However, Mr. Mitchell neither forwarded that praise to the team or acknowledged he received it to Ms. Ramirez.

56. Aerotek offered certain employees bonus compensation for successfully completing certain sales goals in quarterly and yearly sales contests.

57. Despite the retaliation and reprimands to which Aerotek subjected Ms. Ramirez, she successfully met the yearly sales contest goal in November 2019.

58. As a result of meeting the yearly sales contest goal, Ms. Ramirez was entitled to bonus compensation.

59. Ms. Seitz's micromanagement and reprimands of Ms. Ramirez were an attempt to create a paper trail to justify the termination of Ms. Ramirez's employment in retaliation for her complaints to human resources.

60. Ms. Seitz threatened to terminate Ms. Ramirez's employment in late November 2019.

61. On or about December 13, 2019, Ms. Ramirez resigned from Aerotek to avoid the continued retaliation to which she was being subjected.

62. Through its barrage of retaliatory reprimands and hostility, Aerotek constructively discharged Ms. Ramirez.

63. Aerotek refused to pay Ms. Ramirez the bonus compensation to which she was entitled.

64. Aerotek undertook the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Ms. Ramirez and her federally protected rights.

65. Additionally, and in the alternative, Aerotek undertook the above-pled conduct with reckless disregard for Ms. Ramirez and her federally protected rights.

66. As a result of Aerotek's unlawful conduct, Ms. Ramirez has suffered damages including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

67. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

68. Aerotek discriminated against Ms. Ramirez because of her race, in violation of 42 U.S.C. § 1981 by, *inter alia*, demoting her, subjecting her to different terms and condition of employment than her white counterparts, reprimanding her, and constructively discharging her employment.

69. As a direct and proximate result of Aerotek's actions, Ms. Ramirez has suffered damages including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

70. Aerotek undertook its above-pled unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

71. Alternatively, Aerotek undertook its unlawful conduct recklessly with respect to the Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

## COUNT II
## RETALIATION N VIOLATION OF 42 U.S.C. § 1981

72. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

73. Ms. Ramirez engaged in protected activity by complaining to Aerotek's human resources department that her demotion was discriminatory on the basis of her race and gender.

74. Aerotek retaliated against Ms. Ramirez in violation of 42 U.S.C. § 1981 by, *inter alia*, by subjecting her to different terms and conditions of employment than her counterparts who did not engage in protected activity, reprimanding her, constructively discharging her employment, and refusing to pay the bonus compensation to which she was entitled.

75. As a direct and proximate result of Aerotek's actions, Ms. Ramirez has suffered damages including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

76. Aerotek undertook its above-pled unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

77. Alternatively, Aerotek undertook its unlawful conduct recklessly with respect to the Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

78. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

79. Aerotek discriminated against Ms. Ramirez because of her race, in violation of Title VII, by, among other things, demoting her, subjecting her to different terms and condition of employment than her white counterparts, reprimanding her, and constructively discharging her employment.

80. As a direct and proximate result of Aerotek's actions, Ms. Ramirez has suffered damages including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

81. Aerotek undertook its above-pled unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

82. Alternatively, Aerotek undertook its unlawful conduct recklessly with respect to the Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

## COUNT IV
## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

83. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

84. Aerotek discriminated against Ms. Ramirez because of her gender, in violation of Title VII, by, among other things, demoting her, subjecting her to different terms and condition of employment than her male counterparts, reprimanding her, and constructively discharging her employment.

85. As a direct and proximate result of Aerotek's actions, Ms. Ramirez has suffered damages including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

86. Aerotek undertook its above-pled unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

87. Alternatively, Aerotek undertook its unlawful conduct recklessly with respect to the Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

## COUNT V
## RETALIATION IN VIOLATION OF TITLE VII

88. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

89. Aerotek retaliated against Ms. Ramirez because she engaged in statutorily protected opposition and participation conduct by reporting good faith concerns about race and gender discrimination to Aerotek's human resources department.

90. Aerotek retaliated against Ms. Ramirez for her protected opposition and participation conduct by, *inter alia,* subjecting her to different terms and conditions of employment than her counterparts who did not engage in protected activity, reprimanding her, constructively discharging her employment, and refusing to pay the bonus compensation to which she was entitled.

91. As a direct and proximate result of Aerotek's actions, Ms. Ramirez has suffered damages including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

92. Aerotek undertook its above-pled unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

93. Alternatively, Aerotek undertook its unlawful conduct recklessly with respect to the Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

## COUNT VI
## BREACH OF CONTRACT

94. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

95. Aerotek and Ms. Ramirez entered into a contract when Aerotek offered Ms. Ramirez bonus compensation in exchange for meeting certain sales goals in the yearly sales contest.

96. Ms. Ramirez performed her obligations under the contract by successfully meeting the sales goals as set by Aerotek.

97. As a result, Aerotek was required to pay Ms. Ramirez the bonus compensation for the yearly sales contest.

98. Aerotek has refused and continues to refuse to pay Ms. Ramirez the bonus compensation.

99. Aerotek has breached its obligations to Ms. Ramirez under the contract.

100. Aerotek is liable to Plaintiff for the damages she incurred as a result of its breach of contract.

## COUNT VII
## PROMISSORY ESTOPPEL

101. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

102. Aerotek promised to pay Ms. Ramirez bonus compensation if she successfully met certain sales goals in the yearly sales contest.

103. Aerotek should have reasonably expected that its promise would have induced Ms. Ramirez to expend her efforts to meet the sales goals in the yearly sales contest.

104. Ms. Ramirez did expend her efforts to meet the sales goals in the yearly sales contest, and did successfully meet those goals, in justifiable reliance on Aerotek's promise to pay her bonus compensation.

105. Aerotek must be forced to comply with its promise to pay Ms. Ramirez the bonus compensation after she meet the sales goals in the yearly sales contest.

106. If Aerotek's promise is not enforced, Plaintiff will suffer grave injustice.

## COUNT VIII
## ATTORNEYS' FEES AND EXPENSES OF LITIGATION, O.C.G.A. § 13-6-11

107. Ms. Ramirez incorporates each of the above factual allegations as if fully restated herein.

108. Aerotek has acted in bad faith, been stubbornly litigious, and/or caused Ms. Ramirez unnecessary trouble and expense in litigation this case. As a result of Aerotek's conduct, Ms. Ramirez is entitled to recover the expenses of this litigation, including attorneys' fees pursuant to Georgia law, including but not limited to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ambar Ramirez respectfully invokes the powers of this Court and prays for the following relief:

a.  That the Court grant trial by jury;

    b.  That the Court issue a declaratory judgment that Defendant violated Plaintiff's rights under 42 U.S.C. § 1981 and Title VII;

    c.  That the Court order an injunction prohibiting the Defendant from engaging in such unlawful conduct in the future and to enact appropriate remedial training and other measures reasonably necessary to prevent similar future conduct;

    d.  That the Plaintiff have and recover from Defendant all amounts allowable under 42 U.S.C. § 1981 and Title VII, including but not limited to lost compensation, lost benefits, compensatory and punitive damages; damages for mental anguish, and all other damages allowed by law;

    e.  That the Plaintiff have and recover from Defendant all damages for breach of contract and/or promissory estoppel allowable under the laws of the State of Georgia;

    f.  That the Court award pre-judgement and post-judgement interest to Plaintiff on any of the above amounts;

    g.    That the Court order Defendant to pay all of Plaintiff's reasonable attorneys' fees and costs of litigation; and

    h.    That the Court grant such other and further equitable and monetary relief as it deems just and proper.

Respectfully submitted this 10th day of December, 2020.

**LEGARE, ATTWOOD & WOLFE, LLC**

/s/ *Amelia A. Ragan*
Amelia A. Ragan
Georgia Bar No. 381387
aaragan@law-llc.com
Cheryl Barnes Legare
Georgia Bar No. 038553
cblegare@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

Counsel for Plaintiff